UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH CHRISTOPHER ADAMS, et al.,<br><br>Defendants. | No. 2:13-cv-1077 KJM AC<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, J & J Sports Productions, Inc., has the "exclusive nationwide commercial distribution (closed-circuit) rights to *Manny Pacquiao v. Timothy Bradley, WBO Welterweight Championship Fight Program*, telecast nationwide on Saturday, June 9, 2012" ("the Program"). Complaint (ECF No. 1) ¶ 16. Plaintiff's complaint alleges that defendants unlawfully intercepted the Program and showed it in their business establishment to customers. Plaintiff seeks a default judgment.

## I. BACKGROUND

Plaintiff filed its complaint against (1) Joseph Christopher Adams, individually and d/b/a Moon River Inn, and (2) Waters Edge Retreat/Moon River Inn, LLC, d/b/a Moon River Inn. Plaintiff alleges violations of (1) The Communications Act of 1934, as amended, 47 U.S.C. §§ 553 & 605, and (2) Cal. Bus. & Prof. Code § 17200. On September 6, 2013, plaintiff filed proofs of service on both defendants. ECF Nos. 6 & 7. On August 28, 2013 and August 30,

1

2013, plaintiff properly served both defendants by substituted service pursuant to Cal. Civ. Proc. Code § 415.20(b), as permitted by Fed. R. Civ. P. 4(e)(1).  See ECF Nos. 6 & 7.  Plaintiff left the summons and complaint with a person apparently in charge, at defendants' business at 8301 Freeport Boulevard, Sacramento, CA 95832, and subsequently mailed the items to the same address.  ECF Nos. 6 & 7.

On September 20, 2013, defendant Adams filed an Answer.  ECF No. 8.  On July 17, 2015, the Clerk entered a default against defendant Moon River Inn.  ECF No. 33.  On July 20, 2015, Adams' Answer was stricken from the docket after he stopped participating in the lawsuit and failed to provide a current mailing address.  See ECF No. 34.  On the same day, July 20, 2015, the Clerk entered a default against defendant Adams.  ECF No. 35.  On July 22, 2015, plaintiff filed the current motion for a default judgment to be entered against both defendants.  ECF No. 40.

## II.  LEGAL STANDARDS

### A.     Motion for Default Judgment

It is within the sound discretion of the district court to grant or deny an application for default judgment.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this determination, the court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  The court exercises caution in exercising this discretion, fully aware of the seventh factor, "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."  See id.

"'The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'"  TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977)).  However, "necessary facts not contained in the pleadings,

2

and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992).

### B. The Communications Act of 1934

Plaintiff sues under 47 U.S.C. §§ 553 and 605. Both sections are provisions of the Communications Act of 1934, as amended, 47 U.S.C. §§ 151-622.

Section 553 prohibits the unauthorized interception of "any communications service offered over a cable system." 47 U.S.C. § 553(a)(1). The court is authorized to award damages measured by plaintiff's "actual damages" along with "any profits" defendants made by the violation, as well as statutory damages of $250 to $10,000. 47 U.S.C. § 553(c)(3)(A)(i), (ii). If the violation was willful and done for "commercial advantage or private financial gain," the court can add up to $50,000 in addition to the actual or statutory damages. Id. § 553(c)(3)(B).

Section 605 "prohibits the unauthorized receipt and use of radio communications for one's 'own benefit or for the benefit of another not entitled thereto.'" DirecTV, Inc. v. Webb, 545 F.3d 837, 844 (9th Cir. 2008) (quoting 47 U.S.C. § 605(a)). "[T]he 'communications' protected by § 605(a) include satellite television signals." Id.

> [L]iability under section 605 requires proof that a defendant has "(1) intercepted or aided the interception of, and (2) divulged or published, or aided the divulging or publishing of, a communication transmitted by the plaintiff."

California Satellite Systems v. Seimon, 767 F.2d 1364, 1366 (9th Cir. 1985) (quoting National Subscription Television v. S & H TV, 644 F.2d 820, 826 (9th Cir. 1981)).[1]

The court is authorized to award the same damages available for violation of Section 553, except that the minimum statutory damages is $1,000, and the court may add $100,000 in enhanced statutory damages if the violation was willful and for commercial or private financial gain. See 47 U.S.C. § 605(e)(3)(C)(i)(I), II), (ii).

////

---

[1] Plaintiff here is not alleged to have "transmitted" the Program, but it was the exclusive licensee of the (unidentified) transmitter. It has standing to sue as an "aggrieved person" under the statute. See 47 U.S.C. § 605(d)(6) ("aggrieved person" includes "any person with proprietary rights in the intercepted communication").

III.  ANALYSIS

Given defendants' complete failure to participate in this lawsuit, it appears that the only Eitel factors that need real discussion here are the merits of the claim, including the sufficiency of the complaint, and the sum of money at stake in the action.  There is no "prejudice" to defendants from granting the default judgment since they have been given the opportunity to participate in the lawsuit.  There is no dispute about what happened.[2]  Defendants have offered no excuse for their lack of participation, and the case cannot be tried without defendants' participation.

A.  The Merits

1.  47 U.S.C. § 605

Plaintiff seeks entry of default judgment on its claim for violation of 47 U.S.C. § 605(a).  The complaint alleges that it held the exclusive right to broadcast the Program.  Complaint ¶ 16.  It further alleges that defendants unlawfully intercepted the broadcast of the Program and showed it at the Moon River Inn, resulting in increased profits for that establishment.  Complaint ¶¶ 11-13.[3]  These facts, taken as true pursuant to TeleVideo and Geddes, establish defendants' violation of 47 U.S.C. § 605, and plaintiff's entitlement to statutory damages.

Plaintiff does not allege any amount of actual damages in its complaint, and in its brief for default judgment, plaintiff elects to seek only statutory damages.  Application for Default Judgment ("Motion") at 9.  Plaintiff argues that the statute is intended to deter this type of "piracy."  Motion at 10.[4]  Accordingly, plaintiff seeks the maximum in statutory damages.

There is one Ninth Circuit case that offers some guidance on how to assess statutory damages here.  In Kingvision Pay-Per-View Ltd. v. Lake Alice Bar, the Ninth Circuit provided

---

[2] Defendant Adams' Answer states that he showed the Program to friends at a private party, not at his business for commercial gain.  However, the Answer was stricken, and there is nothing extant in the record before the undersigned to put any of plaintiff's allegations in dispute.

[3] Plaintiff also submitted a Declaration from its investigator who went to the Moon River Inn on the night of the Program.  See ECF No. 40-3 at 2-3.  However, this declaration only shows that the investigator went to the establishment, and saw that it was showing a fight between Randall Bailey and Mike Jones.  There is nothing indicating that this was the same program that included the fight between Pacquiao and Smith.  However, the allegations of the complaint are enough to establish the facts for purposes of default judgment.

[4] The court notes that the statute not only creates a private right of action for the aggrieved party, it also makes such piracy a felony, punishable by $50,000 and 2 years in prison for the first offense.  See 47 U.S.C. § 605(e)(2) (if done for commercial or private financial gain).

4

two possible guidelines. First, the district court can consider how much money the defendant would have had to pay the plaintiff to broadcast the program lawfully:

> [Defaulted defendant] would have had to pay somewhere between $3,000 and $6,000 to buy the rights to show the fights on the nights at issue. That furnished the district court with a basis from which it might conclude that $80,400 [the initial default judgment statutory damage award] was far too high.

168 F.3d 347, 350 (9th Cir. 1999). Second, the district court can consider whether the statutory damage award would deter the defendant on the one hand, or put him out of business, on the other:

> Depending on the circumstances, a low five figure judgment may be a stiff fine that deters, while a high five figure judgment puts a bar out of business. The range in the statutory award might allow for a sanction that deters but does not destroy.

Id.

Plaintiff's brief, together with the affidavit from its investigator, offers some information on these two factors. First, plaintiff's brief argues that defendants would have had to pay $2,200 to broadcast the Program lawfully. Motion at 20. Second, plaintiff submitted an affidavit from its investigator who visited the Moon River Inn the night of the Program. ECF No. 40-3. According to the affidavit: there was no cover charge; the investigator bought a $3.00 beer; the establishment had two 32" televisions of which it appears only one showed a fight; the establishment "rates Good" [this rating is unexplained]; the capacity of the bar is about 75 people; and the investigator took three headcounts of patrons, counting 22, 24 and 29. Id.

There are other possible factors. In J & J Sports Productions, Inc. v. Sorondo, the court opined that an enhanced statutory damages award might be warranted depending on whether defendant engaged in promotional advertising, or charged a premium for food or drinks. The court also considered whether the customers were present primarily to watch the broadcast or had come for another purpose while the program was being aired, and whether the defendants were "repeat offenders." 2011 WL 3917391 at *4 (E.D. Cal. 2011) (Snyder, M.J.). However, Judge Snyder opined that "[a]warding the statutory maximum is inappropriate 'in the absence of unusual or particularly egregious circumstances under which a defendant broadcast the fight.'" Id. 2011 WL 3917391 at *5 (quoting Don King Productions/Kingvision v. Maldonado, 1998 WL

879683 (N.D. Cal. 1998)). Judge Snyder, after collecting the cases, recommended "only basic statutory damages for Defendants' violation of 47 U.S.C. § 605." Id.

Here, there is no evidence of promotional advertising, or repeat offender status. The investigator establishes that there was no cover charge, and there is no evidence that defendants charged a premium for drinks or food that night. Defendants' establishment appears to be a fairly small one that could possibly be put out of business with a very large statutory damage award.

In past cases, the undersigned and other federal magistrate judges in this district have considered some or all of these factors and awarded statutory damages accordingly.[5] In light of the factors discussed above, the undersigned will recommend statutory damages of $5,000, and no enhanced statutory damages.

### 2. 47 U.S.C. § 553

Plaintiff mentions Section 553 only in passing, and offers no basis for awarding what would appear to be a duplicative award under this provision, piling on additional damages for the same alleged act of piracy. The undersigned will recommend no damages under this provision.

### 3. Conversion

The court will recommend no damages for plaintiff's Conversion claim because (1) the damages are covered by those awarded under 47 U.S.C. § 605, and (2) plaintiff has submitted no evidence to support it.[6]

---

[5] See, e.g., J & J Sports Productions, Inc. v. Valencia, 2014 WL 2918884 (E.D. Cal. 2014) (Claire, M.J.) (in similar circumstances, recommending statutory damages of $5,000, and no enhanced statutory damages); J & J Sports Productions, Inc. v. Torres, 2013 WL 417748 (E.D. Cal. 2013) (Claire, M.J.) (in similar circumstances, but where defendant was alleged to be a serial repeat offender, recommending statutory damages of $5,000.00 and enhanced damages of $25,000); J & J Sports Productions, Inc. v. Rodriguez, 2010 WL 796942 (E.D. Cal. 2010) (Drozd, M.J.) (in similar circumstances, recommending combined statutory and enhanced damages totaling $5,000); see also, Joe Hand Promotions, Inc. v. Carranza, 2009 WL 4254460 (E.D.Cal.,2009) (Beck, M.J.) (where plaintiff's investigator found the establishment had "approximate capacity of 250 persons," was located in "a relatively urban city," had "nine flat LCD televisions and one big screen projector," and had a "$10.00 cover charge," recommending $10,000.00 in statutory damages and an additional $90,000.00 in enhanced damages).

[6] Plaintiff asserts in its *brief* that defendant would have had to pay $2,200 to broadcast the Program lawfully, but there is no declaration or other evidence to back up this number. It is appropriate to use this figure as an admission by plaintiff in determining that no enhanced damages are warranted, but it is not affirmative evidence of conversion damages.

B.  <u>Sum of money at stake</u>

Plaintiff requests statutory and enhanced statutory damages totaling $110,000, the maximum available under the Communications Act.  Such a large award would weigh against the entry of default judgment.  Given the description of defendants' establishment offered by plaintiff's own investigator, such an award raises the possibility of putting defendants out of business, as warned against by <u>Kingvision</u>, rather than only deterring defendants from future conduct.  However, since the undersigned is recommending only $5,000 in total damages, the factor does not weigh against entering a default judgment.

## IV.  CONCLUSION

For the reasons stated above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (ECF No. 7) be GRANTED;

2. The court enter judgment against defendant on plaintiff's claims brought pursuant to 47 U.S.C. § 605(a);[7]

3. The court award statutory, but not enhanced, damages in the amount of $5,000.00 to plaintiff; and

4. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen (14) days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District

////

////

////

---

[7] Plaintiff does not seek a default judgment based on the state law claim.

7

Court's order.  <u>Turner v.Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: August 27, 2015

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE